# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| PHILLIP RAY POTTER, | ) | CASE NO. 1:14-CV-00144 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | | |

Plaintiff, Phillip Ray Potter ("Plaintiff"), challenges the final decision of Defendant,

Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his

application for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under

Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. This case is before the

undersigned United States Magistrate Judge pursuant to the consent of the parties entered

under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the

Commissioner's final decision is AFFIRMED.

## I.    PROCEDURAL HISTORY

On February 15, 2011, Plaintiff filed his application for POD and DIB, alleging a

disability onset date of January 1, 2007.[1]  (Transcript ("Tr.") 11.)  The claim was denied

initially and upon reconsideration, and Plaintiff requested a hearing before an

administrative law judge ("ALJ").  (Id.)  On July 11, 2012, an ALJ held Plaintiff's hearing.

(Id.)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (Id.)  A

---

[1]      Plaintiff later amended his alleged onset date to November 24, 2010.  (Tr. 11.)

vocational expert ("VE") also participated and testified.  (*Id.*)  On September 26, 2012, the ALJ found Plaintiff not disabled.  (Tr. 8.)  On November 18, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On January 22, 2014, Plaintiff filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 14, 15, 16.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in evaluating the opinion of Plaintiff's treating physician; and (2) the ALJ erred in evaluating Plaintiff's seizures.

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born in November 1960 and was 50-years-old on the alleged disability onset date.  (Tr. 21.)  He had at least a high school education and was able to communicate in English.  (*Id.*)  He had past relevant work as an industrial cleaner and bagger.  (Tr. 20.)

### B.    Medical Evidence

The ALJ found that Plaintiff had the following severe impairments: herniated lumbar disc at L5-S1; epilepsy; anxiety disorder; and cognitive disorder, mild deficits.  (Tr. 13.)  Plaintiff's challenges to the ALJ's decision concern the ALJ's evaluation of an opinion rendered by Plaintiff's treating physician, and the ALJ's evaluation of Plaintiff's seizures.  Accordingly, the Court will limit its summary of Plaintiff's medical records to evidence most relevant to those issues.

2

### 1.    Medical Reports

Plaintiff testified that he began having back problems in 2003, and that there was no accident or incident that caused the onset of his back problems.  (Tr. 36.)  A lumbar magnetic resonance imaging (MRI) scan from January 2008 showed left central disc herniation at L5-S1, which impinged on Plaintiff's left S1 nerve root, and multilevel disc degeneration and disc bulging.  (Tr. 298.)  An electromyography (EMG) ordered by Howard Lee, M.D., in January 2008 showed left L4-5 radiculopathy and systemic demyelinating polyneuropathy.  (Tr. 301.)

In June 2009, Plaintiff's treating physician, Robert McDougall, M.D., opined that Plaintiff could lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently.  (Tr. 307.)  Dr. McDougall also noted that Plaintiff's ability to stand and walk was affected by his impairment, but did not describe to what extent Plaintiff was limited.  (*Id.*)

In April 2012, Dr. McDougall opined that Plaintiff could lift or carry 21 pounds occasionally and 12 pounds frequently.  (Tr. 319.)  Dr. McDougall further opined that Plaintiff's ability to stand and walk were affected by his impairment, and that in an eight-hour workday Plaintiff could stand and/or walk for a total of two hours.  (*Id.*)  Dr. McDougall also indicated that Plaintiff could sit for six hours in an eight-hour workday and two hours without interruption.  (*Id.*)  With respect to postural activities, Dr. McDougall opined that Plaintiff could never climb, balance, kneel, or crawl; and he could occasionally stoop and crouch.  (Tr. 320.)  Dr. McDougall found that Plaintiff could not be exposed to heights, moving machinery, dust, or fumes.  (*Id.*)

From June 2000 until 2011, Plaintiff treated with Leonard M. Weinberger, M.D., a neurologist, for epilepsy.  (Tr. 168-174, 159, 254-260, 315-317.)  This treatment consisted

3

primarily of evaluation, neurological examination, and medication, including Tegretol, Keppra, and Neurontin.  In July 2009, Dr. Weinberger opined, in part, that Plaintiff's seizure disorder did not affect his ability to lift and carry, push and pull, or walk and stand.  (Tr. 313.)

### 2.    Agency Reports

In June 2011, state agency reviewing physician Nick Albert, M.D., opined, in part, that Plaintiff had the ability to stand and walk with normal breaks for about six to eight hours total in a normal workday.  (Tr. 67-68.)

In June 2011, Plaintiff saw Gregory A. Moten, D.O., for a physical examination.  (Tr. 282-286.)  The examination revealed that Plaintiff had degenerative disc disease of the lumbar spine, seizure disorder, and depression.  (Tr. 285.)  Dr. Moten noted that Plaintiff demonstrated normal muscle strength and range of motion except for in his lumbar spine.  (*Id.*)  He further noted that Plaintiff's overall level of function was moderately restricted.  (*Id.*)  Dr. Moten opined that Plaintiff was capable of lifting 20 pounds for one-third of the work day and 10 pounds for two-thirds of the work day.  (Tr. 286.)

In October 2011, state agency reviewing physician Willa Caldwell, M.D., opined that Plaintiff could stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday.  (Tr. 83.)

### C.    Hearing Testimony

### 1.    Plaintiff's Hearing Testimony

Plaintiff testified that he began having back problems in 2003.  (Tr. 36.)  He stated that he could no longer work due to his inability to lift, bend, or pull as a result of his back pain.  (Tr. 38.)  Plaintiff testified that he could walk only short distances before his back

4

went out and he could not stand for very long.  (*Id.*)  He stated that he could stand for about an hour before his lower back would "give out."  (Tr. 39.)

Plaintiff further testified that he had epilepsy.  (Tr. 40.)  He stated that his epileptic seizures affected him more so when he first began having seizures, but now "they've pretty much got it under control" with medication.  (*Id.*)  Plaintiff testified that he used to have three seizures per month but was now "down to maybe one seizure a month and some are worse than others."  (*Id.*)  He stated that some seizures lasted for one minute and others lasted all day.  (Tr. 41.)  Plaintiff testified that he sometimes experienced seizures when he was working.  (Tr. 46.)

Plaintiff stated that on an average day, he would do light work around the house such as laundry and cleaning the kitchen.  (Tr. 42.)  He would sometimes go out to eat and to different parks with his 16-year-old son.  (Tr. 42-43.)  Plaintiff attended church every Sunday.  (Tr. 49.)

### 2.    Vocational Expert's Hearing Testimony

Nancy Borgeson, a vocational expert, testified at Plaintiff's hearing.  The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience who would be capable of performing a limited range of light work with no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; and occasional stooping, kneeling, crouching, and crawling.  (Tr. 53.)  The individual would be unable to work around hazards, unprotected heights, or dangerous machinery, and would be unable to perform commercial driving.  (*Id.*)  The individual could perform simple, routine, repetitive tasks and would be off-task 5% of the time.  (Tr. 53-54.)  The individual could not work in a fast-paced work environment and could have frequent contact with the

5

general public, coworkers, and supervisors.  (*Id.*)  The VE testified that the individual could perform such jobs as a cleaner/housekeeper, a bench assembler, and a visual inspector. (Tr. 54.)

### III.  STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not

6

prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since November 24, 2010, the alleged onset date.

3. The claimant has the following severe impairments: herniated lumbar disc at L5-S1; epilepsy; anxiety disorder; cognitive disorder, mild deficits.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he cannot climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs.  He can occasionally stoop, kneel, crouch, and crawl.  He cannot work around hazards, unprotected heights, dangerous machinery, or perform commercial driving.  He can perform simple, routine, repetitive tasks and would be off task 5% of the time.  He cannot work in a fast-paced work environment.  He can have frequent contact with the general public, coworkers, and supervisors.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born in November 1960 and was 50-years-old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from November 24, 2010, through the date of this decision.

(Tr. 13-22.)

## V.   LAW & ANALYSIS

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a

8

preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

> **B.      Plaintiff's Assignments of Error**
>
> > **1.      The ALJ Erred in Evaluating the Opinion of Plaintiff's Treating Physician.**

Plaintiff argues that the ALJ erred in evaluating the April 2012 opinion of Plaintiff's treating physician, Dr. McDougall.  Dr. McDougall opined, in part, that Plaintiff's ability to stand and walk were affected by his impairment, and that in an eight-hour workday Plaintiff could stand and/or walk for a total of two hours.  (Tr. 319.)  The ALJ addressed Dr. McDougall's April 2012 opinion in his decision and assigned the opinion "significant weight."[2]  (Tr. 17.)

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted).  If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the

---

[2]      In referencing Dr. McDougall's April 2012 opinion, the ALJ mistakenly noted that the opinion was from 2011.  It is clear from the ALJ's citation to Exhibit 12F, where Dr. McDougall's April 2012 opinion appears in the record, as well as from the ALJ's description of the opinion, that the ALJ was referring to Dr. McDougall's April 2012 opinion.  (Tr. 17.)

treating physician's opinion and the reasons for that weight.  See *Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).  This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson,* 378 F.3d at 544 (internal quotation marks omitted).  Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand.  *Id.*

Dr. McDougall opined that in an eight-hour workday, Plaintiff would be capable of standing or walking for two hours total.  (Tr. 319.)  Plaintiff maintains that this limitation places his abilities outside the range of "light" work and into "sedentary" work; and, therefore, the ALJ erred in finding Plaintiff capable of a limited range of light work.  Plaintiff is correct in his assertion that he could not perform light work according to Dr. McDougall's opinion, as light work often requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday.  See S.S.R. 83-10, 1983 WL 31251, at *5-6.  As the Commissioner notes in her Brief, however, the ALJ gave *significant*, rather than *controlling*, weight to Dr. McDougall's April 2012 opinion.  Therefore, while the ALJ did not reject Dr. McDougall's opinion in determining Plaintiff's residual functional capacity (RFC), he did not adopt the opinion in its entirety, nor was he required to.  *See* 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p ("A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.  It may still be entitled to deference and be adopted by the adjudicator.").  By giving Dr. McDougall's opinion "significant weight," the ALJ was not required to adopt all of the limitations Dr.

10

McDougall assessed, nor was he required to reject Dr. McDougall's opinion altogether because he disagreed with part of it.

The ALJ was not required to account for all of Dr. McDougall's assessed limitations,[3] and it is evident from the ALJ's discussion of other medical and opinion evidence in the record that he did not consider Dr. McDougall's April 2012 opinion to be controlling.   Indeed, as the ALJ gave "significant weight" to Dr. McDougall's 2009 opinion and to Dr. Weinberger's opinion, neither of which contained the same standing and walking limitations as Dr. McDougall's 2012 opinion, it is sufficiently clear that the ALJ did not intend to include all of Dr. McDougall's restrictions in Plaintiff's RFC.  (Tr. 17, 307, 313.)

Finally, the ALJ's conclusion that Plaintiff was capable of performing a limited range of light work is supported by substantial evidence in the record.  As the ALJ discussed in his opinion, Plaintiff's seizure disorder was under control with three medications and he did not experience side effects from those medications.  (Tr. 16.)  Additionally, the ALJ noted that Plaintiff reported having the ability to clean, do laundry, mow the lawn, and perform yard work when necessary.  (*Id.*)  Furthermore, in finding that Plaintiff could perform a limited range of light work, the ALJ relied on the opinions of reviewing physicians Drs. Albert and Caldwell, who found that, based on the record as a whole, Plaintiff had the ability to stand and walk with normal breaks for about six to eight hours in a normal workday.  (Tr. 17, 67-68, 83-84.)  For the foregoing reasons, Plaintiff's first assignment of

---

[3]     Plaintiff has not raised an argument that the ALJ violated the treating physician rule by failing to provide good reasons for assigning controlling weight to Dr. McDougall's April 2012 opinion, nor does Plaintiff maintain that the ALJ failed to provide good reasons for rejecting part of the opinion.

11

error does not present a basis for remand of his case.

## 2.    The ALJ Erred in Evaluating Plaintiff's Seizures.

Plaintiff argues that the ALJ erred by improperly characterizing reports from Plaintiff and his wife that Plaintiff's seizures lasted only one minute.  Plaintiff testified that his seizures typically lasted one minute or less and that, on rare occasion, they lasted "all day." (Tr. 41.) The ALJ specifically asked Plaintiff how often he experiences seizures that last all day, and Plaintiff responded "[n]ot very often," because his three medications worked to control his seizures.  (*Id.*)  While the ALJ did not specifically acknowledge in his decision Plaintiff's testimony that he sometimes had seizures lasting all day, Plaintiff has failed to show how this prejudiced him.  The medical evidence, as analyzed by the ALJ in his decision, supports a finding that Plaintiff's seizures were infrequent, as Plaintiff's medications kept him "seizure free." (Tr. 16, 19.)  Moreover, it was Plaintiff's testimony that, with medication, his epileptic seizures were "under control" and "well controlled."  (Tr. 16, 40, 41.)

Plaintiff also maintains that the ALJ erred in evaluating the third party opinion from Plaintiff's wife, Cheryl Potter.  On March 24, 2011, Mrs. Potter responded to a questionnaire regarding Plaintiff's seizures.  (Tr. 203.)  She stated that most of Plaintiff's seizures that she had observed lasted about one minute, "however, at times the effects of the seizures lasted for hours (dizziness)."  (*Id.*)  She further stated that Plaintiff was often incoherent for several minutes following a seizure and sometimes became dizzy and lost his balance.  (*Id.*) The ALJ acknowledged the third party function report from Mrs. Potter and gave the report "some weight," because Mrs. Potter had first-hand knowledge of Plaintiff's seizures.  (Tr. 19.)

While Plaintiff's argument regarding Mrs. Potter's opinion is brief and lacking in explanation,[4] the Court assumes that Plaintiff takes issue with the ALJ's failure to specifically acknowledge Mrs. Potter's opinion that the effects of Plaintiff's seizures sometimes lasted for hours.  This argument has no merit.  The Social Security Rulings provide that, in determining the credibility of a claimant's statements, the ALJ must consider the entire case record, including statements from non-medical sources like spouses, friends, and neighbors.  *See* S.S.R. 96-7p, 1996 WL 374186, at *1 (S.S.A.); *see* S.S.R. 06-03p, 2006 WL 2329939, at *1 (S.S.A.).  Although information from "other sources" cannot determine the existence of a medically determinable impairment, it can provide insight into the severity of the impairment and how it affects the individual's ability to function.  S.S.R. 06-3p, 2006 WL 2329939, at *2.

Here, the ALJ specifically acknowledged Mrs. Potter's third party function report and discussed nearly all of her statements in assigning her opinion "some weight."  (Tr. 19.)  To assert, as Plaintiff purportedly does, that the ALJ was required to acknowledge each and every line of Mrs. Potter's opinion does not comport with the language of the Social Security Regulations:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally *should* explain the weight given to opinions from these "other sources," or

---

[4]    In arguing that the ALJ erred in evaluating Mrs. Potter's opinion, Plaintiff states: "The ALJ stated in his decision that he gave some weight to Mrs. Potter's report due to her first hand knowledge, but seemingly skewered her report in the remainder of his discussion of the seizure disorder."  (Plaintiff's Brief ("Pl.'s Br.") 18.)  Plaintiff does not expand upon this conclusory allegation or provide any legal support for his contention that the ALJ "skewered" Mrs. Potter's report.  (*Id.*)

13

> otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

S.S.R. 06-03p, 2006 WL 2329939, at *6 (emphasis added).  An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party; and an ALJ is not required to make explicit credibility findings as to each bit of conflicting testimony so long as his factual findings as a whole show that he implicitly resolved such conflicts.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (per curiam) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999)).  While the ALJ did not specifically discuss Mrs. Potter's observation that Plaintiff's seizures sometimes lasted "for hours," it is evident from the ALJ's discussion of Mrs. Potter's opinion that he considered her statements and relied on them to some degree in determining the extent Plaintiff was limited by his seizures.  Indeed, the ALJ exceeded the requirements of SSR 06-03p, which provides that an adjudicator generally *should* explain the weight given to opinions from "other sources."  Accordingly, Plaintiff's contention that the ALJ erred in his evaluation of Mrs. Potter's opinion letter lacks merit.

## VI.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: June 2, 2015